# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

TELLEY L. MCLEMORE,      )
                             )
     Plaintiff,          )
                             )
v.                           )         CV619-045
                             )
APRIL C. SMITH/HENRY,      )
                             )
     Defendant.         )

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Telley McLemore brings this breach of contract action against Georgia resident April C. Henry for an alleged violation of a non-disclosure agreement. Doc. 1 at 3-4. For the unauthorized disclosure of certain "trade secrets" and "defamation" via email, plaintiff seeks $100 million and to be "grandfathered into all patents, copyrights, trademarks produced within the lifespan of [the] non-disclosure agreement," for his criminal record to be expunged, to regain his right to bear arms as well a concealed-carry permit, dual citizenship and a passport for him, his "mother," and "kids," and a clean credit report. *Id.* at 4. McLemore attaches more than a hundred pages of largely

handwritten notes, arguments, and exhibits, including random medical records and Bible citations, in support of his claims. *See* doc. 1-3.

"Federal courts are courts of limited jurisdiction[, and t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375, 377 (1994). It is presumed that a case lies outside that jurisdiction, and the party asserting it (here, the plaintiff) bears the burden of overcoming that presumption. *Id.* "In a given case, a federal district court must have jurisdiction under at least one of the three types of subject-matter jurisdiction: (1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997). The Court cannot fill in jurisdictional gaps for him. *Boles v. Riva*, 565 F. App'x 845, 846 (11th Cir. 2014) ("[E]ven in the case of *pro se* litigants [where pleadings are liberally construed], this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." (quotes and cite omitted)).

Plaintiff has not clearly alleged any basis for this Court's subject matter jurisdiction. *See generally* doc. 1. McLemore lists a Florida address but admits that he is currently detained in Toombs County. Moreover, the referenced contract clearly demonstrates that it was a contract between two Georgia residents: McLemore's Contractor Services (based in Vidalia, Georgia) and Henry's Pink Roses (based in Lyons, Georgia). *See, e.g.*, doc. 1-3 at 1, 4, 5, 7. There is thus no basis for diversity jurisdiction. *See* 28 U.S.C. § 1332(a). "Complete" diversity is required -- no opposing parties may be citizens of the same state. *See, e.g., Wisconsin Dep't of Corrs. v. Schacht*, 524 U.S. 381, 388 (1988).

Even fully crediting the allegations of the Complaint — which, if not entirely fantastical, stretch credulity — because plaintiff's own allegations belie complete diversity of the parties, his Complaint should be **DISMISSED**.[1] *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at

---

[1] Though a *pro se* prisoner normally should be given an opportunity to amend his complaint at least once, *see, e.g., Johnson v. Boyd*, 568 F. App'x 719, 724 (11th Cir. 2014); *Duff v. Steub*, 378 F. App'x 868, 872 (11th Cir. 2010), "a district court need not allow amendment if the amended complaint would still be subject to dismissal." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). Plaintiff's mere mentioning of certain federal statutes and acts (*e.g.*, "RICO," the Sherman Act, and the Economic Espionage Act) and items governed by federal agencies (*e.g.*, passports) is not enough to invoke this Court's subject matter jurisdiction. *See* doc. 1 at 4. And it is clear that no amendment will achieve complete diversity between the parties. *See* doc. 1-3 at 1. Plaintiff's claims are dead on arrival, and do not appear amendable.

any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

But more should be noted. The contours or nature of plaintiff's relationship and business with Henry are unclear. *See, e.g.,* doc. 1-3 at 42

(welcoming individuals to "Chi-Delicate" and informing them that "by signing this non disclosure [they] have now become a Pink Rose!" and warning them never to speak about their "task[s] that will take no longer than a hour of [their] time to accomplish."), *id*. at 43 (explaining that Pink Roses believe they "were put on Earth to serve and heal through our delicate hands, by massaging our clients."); *id*. at 46 (a list of Pink Roses "Board Members"); *see also* doc. 1-3 at 27 (confusing letter to her "husband" from Henry, signed with her middle name "Cheyenne" and referring to herself in the plural, to apologize on behalf of "corrupting" herself and other women via Facebook messages and promising to pray and correct bad habits going forward in their "business/married" lives), *id*. at 47 (Henry's letter to her "parents" admonishing them for failing to teach her to "be respectful" and "responsible"), *id*. at 56 (letter from "LaLaLoh" professing "love" and explaining that "we are not allowed to think but we can give ideas and brainstorm").  Such odd contracts and letters certainly evoke the impression of illicit activities.

It is also unclear precisely how freely and voluntarily Henry entered into any of these alleged contracts.  *See, e.g.,* doc. 1-3 at 9 (2015 letter temporarily terminating their contract until Henry graduated from

massage school and received state certification, and expressing displeasure at her failure to deliver on her "brilliant and remarkable talents or expertise (miracles)" and "successful project/grant . . . ex: Smurfett N Thangs"); *id.* at 15 & 16 (Henry's agreement to pay McLemore $1000 per month for five (and then ten) years "for his time, encouragement, and generosity."); *id.* at 17, 18 & 19 (Henry's agreement to purchase McLemore's van for $5,500 and pay $90,000 for his "time, support, and teaching" and to relinquish control over her "financial accounts and pin numbers" to McLemore from June 2017 through June 2023), *id.* at 20 (upping the amount owed to $108,000 to account for Henry's "outrageous spending habit"), *id.* at 22 (promising to pay McLemore "fifteen thousand dollars" a month to apologize for "being disrespectful and stubborn for his time and generosity"), *id.* at 25 ("relinquishing" her car, all credits cards and child support, 60% of her taxes and 40% of her 401K to McLemore as well as a cut of any future business proceeds); *see also* doc. 1-3 at 71-74 (Vidalia Police Department report for June 2017 open container and felonious willful obstruction of a police officer arrest, naming April Cheyenne Henry as the passenger of the vehicle and McLemore as the individual drinking a beer in the vehicle and resisting arrest), *id.* at 75-76

(Toombs County warrant nos. 06-12-17-3 & 06-12-17-4 authorizing McLemore's arrest), *id*. at 82-85 (Lyons Police Department report for October 2017 domestic disturbance and simple assault, naming April Cheyenne Henry as the complainant and victim and noting the altercation started when McLemore "accused her of releasing information about a business they had started."), *id*. at 67-68 (letter from McLemore to Henry explaining that he was "not mad or upset with [her] or [her] family" for, perhaps, electing to testify against him, but suggesting that if she were to marry him — "Husband and wife can't testify against each other for the *thousandth* time" —  that all sorts of ills would be remedied).

Given the suspect nature of plaintiff's "contract" with Henry and the State's concerns that McLemore has been "stalking" Henry (*see* doc. 1-3 at 87, Toombs County Superior Court "motion to revoke bond" on warrant nos. 06-12-17-3 & 06-12-17-4), the Court further **ORDERS** that a copy of this Report and Recommendation also be served upon the District Attorney for the Middle Judicial Circuit, located at 200 Courthouse Square, Suite 1, Lyons, Georgia 30436, addressed to the attention of John A. Fitzner, III, Chief Assistant District Attorney.

**SO ORDERED AND REPORTED AND RECOMMENDED**, this

<u>18th</u> day of June, 2019.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA